Rachel C. Strickland
Aaron E. Nathan
James H. Burbage
M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY  10019
Telephone: (212) 728-8000
rstrickland@willkie.com
anathan@willkie.com
jburbage@willkie.com
mhoughton-larsen@willkie.com

Michael J. Gottlieb
Meryl Governski (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC  20006
mgottlieb@willkie.com
mgovernski@willkie.com

John Langford
Rachel Goodman
UNITED TO PROTECT DEMOCRACY
82 Nassau Street, #601
New York, NY  10038
Telephone: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Von A. DuBose (*pro hac vice* forthcoming)
DUBOSE MILLER LLC
75 14th Street NE
Suite 2110
Atlanta, GA  30309
Telephone: (404) 720-8111
dubose@dubosemiller.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RUDOLPH W. GIULIANI<br>a/k/a RUDOLPH WILLIAM GIULIANI,<br><br>               Debtor. | Chapter 11<br><br>Case No. 23-12055 (SHL) |
| RUBY FREEMAN and WANDREA' ArSHAYE MOSS,<br><br>               Plaintiffs,<br>    v.<br><br>RUDOLPH W. GIULIANI<br>a/k/a RUDOLPH WILLIAM GIULIANI,<br><br>               Defendant. | Adv. Pro. No. 24-01320 (SHL)<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................3

LEGAL STANDARD...................................................................................................7

ARGUMENT ..............................................................................................................9

      I.      The $70,969,000 Compensatory Damages Award Is Nondischargeable
              Under Section 523(a)(6). ...................................................................................9

          A.      The Declaratory Judgment, to Which the Debtor Stipulated,
                  Conclusively Renders the Compensatory Damages Portion of the
                  Freeman Judgment Nondischargeable Under Section 523(a)(6). ...............9

          B.      Independently, the Issue-Preclusive Effect of the Allegations
                  Deemed Admitted by the Default Judgment Renders the
                  Compensatory Damages Award Nondischargeable Under Section
                  523(a)(6). .................................................................................................12

      II.     The Punitive Damages Award and Attorney's Fee Awards Are Also
              Nondischargeable Under Section 523(a)(6) Because They Are Ancillary
              to the Nondischargeable Compensatory Award. .............................................17

          A.      The $75 Million Punitive Damages Award and $237,113 Attorney's
                  Fee Awards Are Nondischargeable. .........................................................17

          B.      The Attorney's Fee Awards Are Independently Nondischargeable as
                  Compensation for Willful and Malicious Injury.......................................18

CONCLUSION...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ball v. A.O. Smith Corp.*,
    451 F.3d 66 (2d Cir. 2006)........................................................................13

*Beckett v. Bundick (In re Bundick)*,
    303 B.R. 90 (Bankr. E.D. Va. 2003).......................................................23

*Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*,
    242 B.R. 229 (Bankr. W.D.N.Y. 1999) .................................................25

*Bundy Am. Corp. v. Blankfort (In re Blankfort)*,
    217 B.R. 138 (Bankr. S.D.N.Y. 1998)...................................................24

*In re Bush*,
    62 F.3d 1319 (11th Cir. 1995) ...............................................................18

*Carey v. Piphus*,
    435 U.S. 247 (1978)................................................................................16

*City of New York v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011)...................................................................19

*Cohen v. de la Cruz*,
    523 U.S. 213 (1998)................................................................................22

*In re Corey*,
    583 F.3d 1249 (10th Cir. 2009) .............................................................18

*In re Daily*,
    47 F.3d 365 (9th Cir. 1995) ...................................................................18

*In re Docteroff*,
    133 F.3d 210 (3d Cir. 1997)........................................................18, 19, 21

*Fisher v. First Stamford Bank & Tr. Co.*,
    751 F.2d 519 (2d Cir. 1984)...................................................................17

*Freeman v. Giuliani*,
    No. 21-cv-3354 (BAH), 2022 WL 16551323 (D.D.C. Oct. 31, 2022) ....................9

*Freeman v. Giuliani*,
    No. 21-cv-3354 (BAH), 2023 WL 5600316 (D.D.C. Aug. 30, 2023)....................24

*Freeman v. Giuliani*,
No. 21-cv-3354 (BAH), 2023 WL 8472723 (D.D.C. Dec. 7, 2023) ......................................19

*Freer v. Weinstein (In re Weinstein)*,
173 B.R. 258 (Bankr. E.D.N.Y. 1994)....................................................................................23

*Grogan v. Garner*,
498 U.S. 279 (1991).................................................................................................................13

*Haaland v. Brackeen*,
599 U.S. 255 (2023).................................................................................................................14

*Hawkins v. Tyree*,
483 B.R. 598 (S.D.N.Y. 2012)......................................................................................13, 16, 17

*In re Hayes*,
183 F.3d 162 (2d Cir. 1999).....................................................................................................15

*Heslin v. Jones (In re Jones)*,
655 B.R. 868 (Bankr. S.D. Tex. 2023) ....................................................................................21

*In re Hilgartner*,
91 F.4th 186 (4th Cir. 2024) ..............................................................................................22, 23

*Jendusa-Nicolai v. Larsen*,
677 F.3d 320 (7th Cir. 2012) ..............................................................................................22, 23

*Kawaauhau v. Geiger*,
523 U.S. 57 (1998)......................................................................................................13, 15, 16

*Klingman v. Levinson*,
831 F.2d 1292 (7th Cir. 1987) ................................................................................................23

*In re Musilli*,
379 F. App'x 494 (6th Cir. 2010) ............................................................................................16

*In re Nangle*,
274 F.3d 481 (8th Cir. 2001) ..................................................................................................24

*Pagones v. Mason (In re Mason)*,
1999 WL 58579 ...............................................................................................................16, 17

*Pagones v. Mason (In re Mason)*,
No. 95 B 41537 JLG, Adv. Proc. No. 95/1653A,
1999 WL 58579 (Bankr. S.D.N.Y. Jan. 28, 1999)...................................................................13

*PRP Wine Int'l, Inc. v. Allison (In re Allison)*,
176 B.R. 60 (Bankr. S.D. Fla.1994)........................................................................................25

*In re Sarff*,
242 B.R. 620 (B.A.P. 6th Cir. 2000).........................................................................24

*In re Snyder*,
939 F.3d 92 (2d Cir. 2019).......................................................................7, 13, 18, 19

*In re Stelluti*,
94 F.3d 84 (2d Cir. 1996) .............................................................................13

*In re Suarez*,
400 B.R. 732 (B.A.P. 9th Cir. 2009)........................................................................24

*United States v. Fusion Connection, Inc. (In re Fusion Connect, Inc.)*,
634 B.R. 22 (S.D.N.Y. 2021)..............................................................................22

*United States v. Walker*,
239 F. Supp. 3d 738 (S.D.N.Y. 2017)..............................................................15, 18

*Yash Raj Films (USA) v. Akhtar (In re Akhtar)*,
368 B.R. 120 (Bankr. E.D.N.Y. 2007)........................................................................24

## Statutes and Rules

11 U.S.C. § 523(a)(6).......................................................................6, 13, 15, 25

28 U.S.C. § 2201..............................................................................14

Fed. R. Bankr. P. 7056.........................................................................12

Fed. R. Civ. P. 56(a) ...........................................................................12

## Other Authorities

4 *Collier on Bankruptcy* ¶ 523.12[4] (16th ed. 2024)....................................................16

Restatement (Second) of Judgments § 33 (1982) .........................................................15

Pursuant to Federal Rule of Bankruptcy Procedure 7056, Plaintiffs Ruby Freeman and Wandrea' ArShaye "Shaye" Moss respectfully move for summary judgment on all claims in this adversary proceeding to determine the nondischargeability of Defendant Rudolph W. Giuliani's debt to Plaintiffs. In support of their motion, Plaintiffs respectfully submit the following Memorandum of Law.

## <u>INTRODUCTION</u>

This is an unusually simple case. The Bankruptcy Code excepts from discharge "any debt . . . for willful and malicious injury" to another. 11 U.S.C. § 523(a)(6). Here, the relevant debt is a $145,969,000 judgment against Defendant for his intentional acts of defamation and infliction of emotional distress against Plaintiffs (the "Freeman Judgment"). All of the facts necessary to establish the nondischargeability of that debt under Section 523(a)(6) were conclusively established—many times over—in the prior litigation, and Defendant is precluded from relitigating those facts here under well-established law applying collateral estoppel principles in nondischargeability proceedings. There is accordingly no genuine dispute of material fact, and Plaintiffs are entitled to judgment as a matter of law, determining that the entire Freeman Judgment is excepted from discharge under Section 523(a)(6).

After nearly two years of litigation, a default judgment on liability, a trial on damages, and a unanimous jury verdict, the United States District Court of the District of Columbia (the "District Court") entered a final judgment ordering Mr. Giuliani to pay over $145 million to Plaintiffs— nearly $71 million in compensatory damages, $75 million in punitive damages, and $237,223 in attorneys' fees, plus interest. *See* Declaration of Aaron E. Nathan ("Nathan Decl."), Ex. N ¶¶ 1–2 (the "Money Judgment"); *id.* Ex. L. The Final Judgment also declared, in language to which Mr. Giuliani stipulated, that Mr. Giuliani had engaged in "intentional, malicious, wanton, and willful" conduct in committing defamation with actual malice, intentionally inflicting emotional distress

1

on Plaintiffs, and entering into an agreement with co-conspirators to do both. *Id*. ¶ 3 (the "Declaratory Judgment").

The Freeman Judgment is nondischargeable in its entirety. First, the nearly $71 million awarded in compensatory damages is not dischargeable because the facts established in the Freeman Litigation conclusively established that it is a debt for "willful and malicious injury" under Section 523(a)(6). The Freeman Judgment is predicated on the default judgment on liability that the District Court entered as a sanction against Mr. Giuliani after finding that Mr. Giuliani engaged in "willful shirking of his discovery obligations" before and during the litigation. As Mr. Giuliani has admitted, well-established law dictates that the Default Judgment had the effect of deeming true all of Plaintiffs' well-pled allegations, including that he planned and orchestrated a campaign to falsely accuse Plaintiffs of engaging in election fraud, and that Mr. Giuliani "specifically intended to cause Ms. Freeman and Ms. Moss harm." Under Second Circuit precedent, those facts—established as true in the prior litigation—now have preclusive effect in this adversary proceeding. *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019). The damages awarded by the jury to quantify and compensate for Mr. Giuliani's injuries to Plaintiffs therefore arise from willful and malicious injury within the meaning of Section 523(a)(6). In addition, the Declaratory Judgment declared that Mr. Giuliani's underlying tortious conduct was "intentional, malicious, wanton, and willful," and demonstrates that Mr. Giuliani was held liable in the prior litigation for intentional torts that are categorically nondischargeable under Section 523(a)(6).

Second, the remaining monetary components of the Freeman Judgment—the punitive damages award and the attorney's fee awards—are also nondischargeable. As with the compensatory award, the Declaratory Judgment establishes that the punitive damages award arises from "willful" and "malicious" conduct. Independently, both the punitive damages and attorney's

fee awards are nondischargeable because those debts are "ancillary" to, and arise from, the underlying willful and malicious injury that gave rise to the compensatory award. And the fee awards are independently nondischargeable because, as the District Court found in the prior litigation, they arise from Mr. Giuliani's willful and malicious discovery misconduct.

Mr. Giuliani had a full and fair chance to contest the willfulness and maliciousness of his conduct in the underlying litigation. He repeatedly chose not to. Straightforward principles of issue preclusion now prevent Mr. Giuliani from attempting to undo the consequences of his strategic litigation decisions and willful discovery misconduct, and the facts established as a result. Plaintiffs' motion for summary judgment should be granted, and the Court should enter judgment determining that the entirety of the Freeman Judgment is excepted from discharge under 11 U.S.C. § 523(a)(6).

## **BACKGROUND**

A longer summary of the background and facts relevant to the Freeman Litigation is set out in in the *Objection of Ruby Freeman and Wandrea' Arshaye Moss to Debtor's Motion for an Order Modifying the Stay for the Limited Purposes of Allowing the Debtor to File Post Trial Motions to Modify the Judgment and on for a New Trial and to File a Notice of Appeal*, filed in the underlying Chapter 11 case. *See In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Jan. 18, 2024), ECF No. 50. The following is a more limited summary of the facts necessary to resolve this motion for summary judgment on the nondischargeability of Defendant's debt to Plaintiffs.

Ruby Freeman and her daughter, Shaye Moss, served as election workers in the 2020 federal election in Fulton County, Georgia. Nathan Decl. Ex. B (the "Freeman Complaint") ¶¶ 19–20, 31–32. After President Biden was projected as the winner of Georgia's presidential election, Mr. Giuliani convened a team to devise and implement a plan to undermine the legitimacy of the election. *Id.* ¶¶ 5, 33–34, 129; *see also* Nathan Decl. Ex. O at 9–10, 11–12, n.1. Mr. Giuliani and

his team memorialized that plan in a "Strategic Communication Plan" that identified Plaintiffs by name, falsely accused them of criminal election fraud, and laid out a plan to "educate the public" about that purported election fraud. Local Rule 7056-1 Statement of Undisputed Facts ("Rule 7056-1 Statement"), ¶ 75–77, 84; *see also* Nathan Decl. Ex. B ¶¶ 57–64, 165.

Beginning on December 3, 2020, and continuing until the present day, Mr. Giuliani spread, and encouraged others to spread, false statements about Plaintiffs accusing them of excluding election observers under false pretenses, hiding illegal ballots in suitcases, counting illegal ballots multiple times, and passing a USB drive for the purposes of altering the vote counts. Nathan Decl. Ex. J. All of those statements have been conclusively determined to be false in the Freeman Litigation. Rule 7056-1 Statement ¶ 85.

On December 23, 2021, Plaintiffs filed a civil action in the U.S. District Court for the District of Columbia (the "District Court") against Mr. Giuliani, Herring Networks, Inc., d/b/a One America News Network, Charles Herring, Robert Herring, and Chanel Rion. *See Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Dec. 23, 2021) (the "Freeman Litigation"). Rule 7056-1 Statement ¶ 1. All defendants in the Freeman Litigation except for Mr. Giuliani reached a settlement with Plaintiffs and were dismissed from the case. Rule 7056-1 Statement ¶¶ 1, 141.

Plaintiffs filed an amended complaint (the Freeman Complaint) on May 10, 2021, dropping the other defendants and naming only Mr. Giuliani, and asserting claims for defamation *per se*, intentional infliction of emotional distress, and civil conspiracy. Rule 7056-1 Statement ¶ 3; *see* Nathan Decl. Ex. B. Mr. Giuliani moved to dismiss the Freeman Complaint on June 6, 2022, and the District Court denied that motion in full, holding that Plaintiffs' allegations were sufficient as to all of their claims. Rule 7056-1 Statement ¶ 6; *see Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2022 WL 16551323 (D.D.C. Oct. 31, 2022).

The Freeman Litigation proceeded to discovery. But instead of complying with discovery requests like an ordinary litigant, Defendant willfully evaded and obstructed the civil discovery process. Ultimately, the District Court found that "despite [Defendant's] 50 years of experience as an attorney" he "repeatedly flaunted his discovery obligations" and "ignored court orders." *See* Nathan Decl. Ex. C at 45–46; Rule 7056-1 Statement ¶ 42. The District Court found that Defendant's "willful shirking" of his discovery obligations "significantly prejudiced plaintiffs' abilities to prove their claims." Rule 7056-1 Statement ¶¶ 39, 43; Nathan Decl. Ex. C at 5, 38.

After filing, and winning, numerous motions to compel, Plaintiffs ultimately moved for sanctions against Defendant. Rule 7056-1 Statement ¶¶ 20–23, 30–32, 34. The District Court granted the motion, and entered a default judgment on liability as to all of Plaintiffs' claims. Rule 7056-1 Statement ¶ 39. The District Court noted that default judgment is not appropriate unless "the litigant's misconduct is accompanied by 'willfulness, bad faith, or fault.'" Rule 7056-1 Statement ¶ 40; Nathan Decl. Ex. C at 44. The District Court made extensive and specific factual findings and legal determinations that established Mr. Giuliani's pattern of "willful discovery misconduct" satisfied the legal standard for default judgment. Rule 7056-1 Statement ¶ 41; Nathan Decl. Ex. C at 4. The District Court recounted how Mr. Giuliani "repeatedly flaunted his discovery obligations," creating a "murky mess" out of the process. Rule 7056-1 Statement ¶ 42; Nathan Decl. Ex. C at 45. The District Court found that Mr. Giuliani's "willful shirking" of his discovery obligations "significantly prejudiced plaintiffs' abilities to prove their claims." Rule 7056-1 Statement ¶ 43; Nathan Decl. Ex. C at 38. After summarizing Defendant's extensive discovery misconduct, the District Court concluded that "the only reasonable explanation for Giuliani's blatant disregard for satisfying his preservation obligations—despite fully understanding them— is that he ***intentionally and willfully*** ignored them." Rule 7056-1 Statement ¶ 48; Nathan Decl.

Ex. C at 39–40. In light of those findings, the District Court determined that a default judgment on liability was the appropriate sanction, and accordingly entered default judgment against Defendant pursuant to Federal Rule of Civil Procedure 37, "holding him civilly liable on plaintiffs' defamation, intentional infliction of emotional distress, civil conspiracy, and punitive damage claims[.]" Rule 7056-1 Statement ¶ 39.

As Defendant conceded, in addition to establishing Defendant's liability to Plaintiffs on all claims, the effect of that default judgment was to deem admitted all of the well-pleaded allegations in the Freeman Complaint. Rule 7056-1 Statement ¶ 58. Relevant here, that includes Plaintiffs' allegation that all of Mr. Giuliani's conduct was "specifically intended to cause Ms. Freeman and Ms. Moss harm." Nathan Decl. Ex. B at ¶¶ 175, 182.

The case proceeded to trial on damages. The only issue remaining for trial was to *quantify* the harm that Defendant had inflicted on Plaintiffs, and to which he had admitted by virtue of the default judgment sanction. Rule 7056-1 Statement ¶ 53.

On December 15, 2023, a federal jury awarded Plaintiffs $148,169,000.00 in damages resulting from Mr. Giuliani's conduct, including (a) a total of $33,169,000 in compensatory damages for defamation; (b) a total of $40 million in compensatory damages for intentional infliction of emotional distress, bringing the combined total of compensatory damages to $73,169,000; and (c) a total of $75 million in punitive damages. Rule 7056-1 Statement ¶¶ 145–46, n.5.

On December 18, 2023, following the submission of a Joint Stipulation filed by Plaintiffs and Mr. Giuliani, the District Court entered final judgment against Mr. Giuliani awarding Plaintiffs $70,969,000 in compensatory damages, $75 million in punitive damages, $237,113 in attorney's fees, and including the following declaratory relief (to which Mr. Giuliani had stipulated):

a) It is hereby DECLARED (1) that the Actionable Statements set forth in the Amended Complaint, ECF No. 22, are false; (2) that those statements are defamatory and defamatory *per se*; (3) that those statements were of and concerning plaintiffs; (4) that defendant made those statements **with actual malice**; (5) that defendant published those statements to third parties without privilege; and (6) that those statements caused plaintiffs harm;

b) It is further DECLARED (1) that defendant Giuliani engaged in extreme and outrageous conduct which (2) ***intentionally and maliciously*** (3) caused the plaintiffs to suffer severe emotional distress;

c) It is further DECLARED (1) that defendant Giuliani entered into an agreement on or before December 3, 2020, with Donald J. Trump, Christina Bobb, Herring Networks, Inc., d/b/a OAN, Robert Herring, Charles Herring, Chanel Rion, and members of the Trump 2020 Presidential Campaign, including members of the Trump Legal team headed by Giuliani, who caused statements to be published about plaintiffs or participated in such publications, (2) to participate in defamation of and intentional infliction of emotional distress on plaintiffs, and (3) that plaintiffs were injured by unlawful overt acts performed by parties to the agreement pursuant to, and in furtherance of, the common scheme.

d) It is further DECLARED that defendant's conduct was ***intentional, malicious, wanton, and willful***, such that plaintiffs are entitled to punitive damages.

Rule 7056-1 Statement ¶ 146 (emphases added).

On December 20, 2023, the District Court granted Plaintiffs' motion for leave to register the Freeman Judgment in any district of the United States, and dissolved Rule 62(a)'s automatic stay of execution. Rule 7056-1 Statement ¶ 147. Defendant filed a Chapter 11 petition the following day. Rule 7056-1 Statement ¶ 148.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, which "applies in adversary proceedings," Fed. R. Bankr. P. 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

"Parties filing for bankruptcy are generally entitled to a discharge 'from all debts that arose before the date of the order for relief.' But such a 'fresh start' may be granted only to 'the honest but unfortunate debtor.'" *In re Snyder*, 939 F.3d at 101 (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). Accordingly, Section 523(a)(6) of the Bankruptcy Code excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "As used in that section, the word 'willful' indicates 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998)). "The injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will'" *Ball*, 451 F.3d at 69 (quoting *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996)). "Malice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances." *Id.* (cleaned up).

As the Supreme Court has explained, "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" because intentional torts "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Kawaauhau*, 523 U.S. at 61–62. Accordingly, certain intentional torts categorically satisfy Section 523(a)(6)'s elements, including both IIED and intentional acts of defamation. *See, e.g.*, *Hawkins v. Tyree*, 483 B.R. 598, 600 (S.D.N.Y. 2012) (IIED); *Pagones v. Mason (In re Mason)*, No. 95 B 41537 JLG, Adv. Proc. No. 95/1653A, 1999 WL 58579, at *3 (Bankr. S.D.N.Y. Jan. 28, 1999).

"A creditor seeking to establish nondischargeability under § 523(a) must do so by the preponderance of the evidence. Parties may invoke collateral estoppel to preclude relitigation of the elements necessary to meet a § 523(a) exception." *Ball*, 451 F.3d at 69 (citation omitted).

## **ARGUMENT**

Plaintiffs are entitled to summary judgment determining that the Freeman Judgment is nondischargeable in its entirety. As explained below, the compensatory damages' portion of the Judgment is nondischargeable because that award compensates for a willful and malicious injury by Mr. Giuliani to Plaintiffs. Plaintiffs are entitled to summary judgment on that issue for two independent reasons: *first*, the declaratory relief contained in that judgment (to which Mr. Giuliani stipulated) provides that Mr. Giuliani's conduct was "willful" and "malicious," and *second*, because the effect of the default judgment sanction was to deem all well-pleaded allegations in the Freeman Complaint true, which includes Plaintiffs' allegations that all of Mr. Giuliani's conduct was malicious, willful, and specifically intended to harm Plaintiffs.

Furthermore, under well-established law, Plaintiffs are also entitled to summary judgment determining that the punitive damages and attorney's fee portions of the Freeman Judgment are nondischargeable because they arise out of the debt for willful and malicious injury. With respect to the fee awards, Defendant is also precluded from re-litigating the District Court's findings that Mr. Giuliani's conduct giving rise to the fee awards was willful and malicious.

**I.     The $70,969,000 Compensatory Damages Award Is Nondischargeable Under Section 523(a)(6).**

**A. The Declaratory Judgment, to Which the Debtor Stipulated, Conclusively Renders the Compensatory Damages Portion of the Freeman Judgment Nondischargeable Under Section 523(a)(6).**

The compensatory damages portion of the Freeman Judgment is nondischargeable because Mr. Giuliani is foreclosed from contesting the willfulness and maliciousness of Plaintiffs' injuries by the final judgment in the Freeman Litigation, *to which Mr. Giuliani stipulated*. The "point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata." *Haaland v. Brackeen*, 599 U.S. 255, 293

(2023) (internal quotation marks omitted); *see* 28 U.S.C. § 2201 (a declaratory judgment "shall have the force and effect of a final judgment or decree"). Thus, "[i]f a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared, as to all persons who are bound by the judgment." Restatement (Second) of Judgments § 33 (1982).[1]

Here, those "matters declared" include express declaratory relief tracking the language of Section 523(a)(6) and declaring that the conduct giving rise to the Judgment was "willful" and "malicious." Rule 7056-1 Statement ¶ 146; *see* 11 U.S.C. § 523(a)(6). Specifically, the Freeman Judgment declares that all of Mr. Giuliani's "conduct was intentional, malicious, wanton, and willful, such that Plaintiffs are entitled to punitive damages" and that his injury-causing conduct was intentional, i.e., that he: published statements that were defamatory *per se* with "actual malice"; "engaged in extreme and outrageous conduct" that "intentionally and maliciously" caused "the Plaintiffs to suffer severe emotional distress"; and "entered into an agreement" on or before December 3, 2020 with certain co-conspirators in order "to participate in defamation of and intentional infliction of emotional distress" on Ms. Freeman and Ms. Moss. Rule 7056-1 Statement ¶ 146; Nathan Decl. Ex. M at 2–3; Ex. N at 2–3. The declaratory judgment thus establishes that all of the specific conduct giving rise to the compensatory damages award satisfy both elements of nondischargeability as a matter of law.

Further, the Declaratory Judgment establishes that Mr. Giuliani's acts of defamation and intentional infliction of emotional distress constituted the types of intentional torts that are categorically nondischargeable under Section 523(a)(6). Section 523(a)(6) generally encompasses

---

[1] Furthermore, the fact that Defendant has appealed the Freeman Judgment does nothing to disturb its preclusive effect, because "it is settled law, not just in the Second Circuit but also in the Supreme Court, that a district court judgment is imbued with preclusive effect <u>while</u> an appeal is pending." *United States v. Walker*, 239 F. Supp. 3d 738, 742 (S.D.N.Y. 2017) (emphasis in original).

"debts resulting from intentional torts." *In re Hayes*, 183 F.3d 162, 167 (2d Cir. 1999); *Kawaauhau*, 523 at 61 (observing that "the (a)(6) formulation" generally reaches "'intentional torts'"). That includes the intentional torts of IIED and defamation. IIED claims categorically satisfy Section 523(a)(6)'s "willful and malicious" standard. *See Hawkins*, 483 B.R. at 600 ("a claim for intentional infliction of emotional distress satisfies the "willful and malicious injury" standard") (collecting cases); *see also In re Musilli*, 379 F. App'x 494, 498 (6th Cir. 2010) ("This court has created a non-exclusive list of the types of misconduct that satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." (cleaned up)); 4 *Collier on Bankruptcy* ¶ 523.12[4] (16th ed. 2024). And defamation claims such as this one—for *intentional* defamation—do as well. *In re Musilli*, 379 F. App'x at 498; *see Pagones v. Mason (In re Mason)*, 1999 WL 58579, at *3–4.

As the Declaratory Judgment expressly declares, Mr. Giuliani knowingly agreed to, orchestrated, and implemented a plan to "intentionally" inflict emotional distress on Plaintiffs and intentionally commit defamation *per se*—that is, to spread the type of false statements that the law recognizes as "virtually certain to cause serious injury to reputation," such that injury is presumed. *Carey v. Piphus*, 435 U.S. 247, 262 (1978). As the Supreme Court explained in *Kawaauhau v. Geiger*, the proposition that Section (a)(6) generally covers intentional torts is a shorthand for the lodestar of the willfulness analysis: whether the debtor intended "the *consequences* of an act, not simply the act itself." 523 U.S. at 61–62. Here, the Declaratory Judgment establishes that Defendant Giuliani "entered into an agreement" in advance to "participate in defamation" of Plaintiffs, that his conduct was "intentional" and "willful," and that the defamation he ultimately committed was "defamation *per se*," i.e., the type of defamation that is presumed to be harmful.

Given those established facts, there can be no genuine dispute that Mr. Giuliani acted with intent

to cause the "consequences of an act" for which the law presumes there can be only one

consequence: injury to the defamed defendant. Accordingly, the Declaratory Judgment establishes

that Mr. Giuliani's defamation was the type of "intentional libel" that is categorically

nondischargeable under Section 523(a)(6). *Pagones v. Mason (In re Mason)*, 1999 WL 58579, at

*3.

Similarly, the Declaratory Judgment establishes that Mr. Giuliani's IIED conduct

"intentionally and maliciously . . . caused the plaintiffs to suffer severe emotional distress." Nathan

Decl. Ex. N, at 2. Thus, the IIED damages, too, arise from the type of intentional tort that is

categorically nondischargeable under Section 523(a)(6). *See Hawkins*, 483 B.R. at 600.

Finally, the preclusive force of the Declaratory Judgment is made even stronger by the fact

that the District Court entered it based upon Mr. Giuliani's *stipulating* to its precise language and

agreeing that it is "consistent with the default judgment and other related orders" entered by the

District Court and "reflects the law of the case." Nathan Decl. Ex. M, at 2; *see Fisher v. First

Stamford Bank & Tr. Co.*, 751 F.2d 519, 523 (2d Cir. 1984) ("a stipulation of fact that is fairly

entered into is controlling on the parties and the court is bound to enforce it").

Because the Declaratory Judgment establishes all the factual elements necessary for this

Court to find that the Freeman Judgment's compensatory damages component represents a debt

for "willful and malicious injury," Plaintiffs are entitled to summary judgment on that issue.

**B.   Independently, the Issue-Preclusive Effect of the Allegations Deemed Admitted by
the Default Judgment Renders the Compensatory Damages Award
Nondischargeable Under Section 523(a)(6).**

In addition to the preclusive effect of the final Declaratory Judgment itself, the Final

Judgment—which incorporates the default judgment on liability entered as a sanction for Mr.

Giuliani's willful discovery misconduct—further establishes that Mr. Giuliani's conduct was willful and malicious under Section 523(a)(6) as a matter of law.

Under Second Circuit precedent, following the unanimous consensus among the circuits that have confronted the issue, "where [a] default judgment is *entered as a sanction for bad conduct*, and the party being estopped had the opportunity to participate in the underlying litigation, the default judgment has preclusive effect when determining the nondischargeability of a debt in a bankruptcy proceeding." *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019) (emphasis added).[2] In such a situation, nondischargeability is established through collateral estoppel when "all of the elements of the relevant dischargeability provisions are encompassed by the allegations made in the complaint underlying the [prior] court's judgment." *In re Docteroff*, 133 F.3d at 215.[3]

That is precisely the situation here. In these circumstances, as the Second Circuit has explained, "[a]ffording a default judgment entered as a sanction preclusive effect furthers the goal of imposing the sanction in the first instance because it deprives the sanctioned party an opportunity to relitigate an issue that could and should have been decided in the first litigation." *In re Snyder*, 939 F.3d at 100–01. That serves the purposes of collateral estoppel, and is fundamentally fair, because the "only reason that the first court did not have to assess the merits is that the losing parties' misconduct forfeited their right to such an assessment." *Id.* at 101 (cleaned up). As the Third Circuit held in *In re Docteroff*, "[t]o hold otherwise would encourage [similar] behavior . . . and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." 133 F.3d at 215.

---

[2] *See also In re Corey*, 583 F.3d 1249, 1252–53 (10th Cir. 2009); *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997); *In re Bush*, 62 F.3d 1319, 1324–25 (11th Cir. 1995); *In re Daily*, 47 F.3d 365, 368–69 (9th Cir. 1995).

[3] As noted above, that preclusive effect is fully operative here notwithstanding Defendant's pending appeal. *Walker*, 239 F. Supp. 3d at 742.

Thus, where a judgment creditor seeks a determination of nondischargeability in an adversary proceeding, "[c]ollateral estoppel is applicable if the facts established by the previous judgment . . . meet the requirements of nondischargeability[.]" *Id.* And in the default judgment context, that will be true whenever "all of the elements of the relevant dischargeability provisions are encompassed by the allegations made in the complaint underlying the [prior] court's judgment." *Id.* As is well established, the effect of a default judgment sanction is to deem admitted all of the well-pleaded allegations in the operative complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (describing this as an "ancient common law maxim") (cleaned up); *see Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 8472723, at *2 (D.D.C. Dec. 7, 2023) (collecting cases and holding that "[t]he consequence of default due to Giuliani's failure to preserve and produce his communications with others . . . is that the well-pled allegations in the complaint and all inferences that may reasonably be drawn from those allegations are deemed to be true").[4]

Here, the preclusive effect of the default judgment extends to all well-pleaded allegations in the Freeman Complaint. And the Freeman Complaint's allegations, now deemed true, conclusively establish each of the elements of Section 523(a)(6).

As to willfulness, the Freeman Complaint specifically alleged that Mr. Giuliani "acted with willful misconduct" and "malice," and that—with respect to both the torts of defamation and IIED—he "**specifically intended to cause Ms. Freeman and Ms. Moss harm**." Rule 7056-1 Statement ¶¶ 120, 136, 140; Nathan Decl. Ex. B ¶¶ 175, 182 (emphasis added).

---

[4] Indeed, Mr. Giuliani conceded as much in the Freeman Litigation, even insisting upon it when he believed that this rule was favorable to him. *See Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Nov. 27, 2023), ECF No. 110 at 3 (Mr. Giuliani describing the default as an "admission of the facts cited in the Complaint") (internal quotation marks omitted).

14

As to maliciousness, Plaintiffs also specifically alleged that Mr. Giuliani acted "without just cause or excuse," *In re Snyder*, 939 F.3d at 105, alleging that he acted without "applicable privilege or legal authorization," with "actual malice," and that Mr. Giuliani "agreed to . . . maliciously participate in a civil conspiracy" to harm Plaintiffs. Rule 7056-1 Statement ¶¶ 118, 135, 139; Nathan Decl. Ex. B ¶¶ 169, 173, 180, 188.

Lest there be any doubt, these allegations are a small sample drawn from a complaint replete with allegations that alone demonstrated, or from which it was reasonable to infer, that Mr. Giuliani "acted with willful misconduct" and "malice," engaged in conduct that was "calculated to cause harm to Ms. Freeman and Ms. Moss," and "specifically intended to cause Ms. Freeman and Ms. Moss harm," including the following representative examples:

- "[d]espite knowing that the Georgia election officials had refuted the allegations of wrongdoing, Defendant Giuliani chose to deliberately disregard the truth and instead to . . . continue to fabricate and publish lies about Ms. Freeman and Ms. Moss," Rule 7056-1 Statement ¶ 101; Nathan Decl. Ex. B ¶ 8;

- "Defendant Giuliani's character assassination of Ms. Freeman and Ms. Moss was deliberate," memorialized in a "Strategic Communications Plan," "a significant part of which consisted of Defendant Giuliani publishing widely lies about Ms. Freeman and Ms. Moss by name," Rule 7056-1 Statement ¶¶ 75, 84, 109, 117; Nathan Decl. Ex. B ¶¶ 9, 10, 12;

- "Each of these false statements was published with actual malice" and Defendant Giuliani "carried out his campaign with actual malice," Rule 7056-1 Statement ¶¶ 118, 135; Nathan Decl. Ex. B ¶¶ 169, 180;

- Defendant Giuliani "specifically avoided contacting sources who had evidence to disprove [the conspirators'] lies," Rule 7056-1 Statement ¶ 104; Nathan Decl. Ex. B ¶ 128;

- "[h]e encouraged those listening to watch and spread the defamatory clips repeatedly," continued to repeat and republish the false and defamatory statements throughout 2021 and into 2022, including after Plaintiffs initiated [their] action," Rule 7056-1 Statement ¶ 122; Nathan Decl. Ex. B ¶ 12;

- "[a]s a reasonably foreseeable—and intended—result of Defendant's statements and actions, others repeated and amplified these false and defamatory statements," Rule 7056-1 Statement ¶ 121; Nathan Decl. Ex. B ¶ 165;

- Defendant Giuliani further "agreed to intentionally and maliciously participate in a civil conspiracy with other individuals, the purpose of which was to commit the torts of Defamation, Defamation *Per Se*, and Intentional Infliction of Emotional Distress," Rule 7056-1 Statement ¶ 139; Nathan Decl. Ex. B ¶ 188; and

- Defendant Giuliani "has not retracted any of his statements about Plaintiffs," despite being on notice of their falsity prior to December 3, 2020," Rule 7056-1 Statement ¶ 141; Nathan Decl. Ex. B ¶¶ 122, 102.

As these allegations and the complaint as a whole make clear, "Defendant Giuliani's wrongful conduct . . . was calculated to cause harm to Ms. Freeman and Ms. Moss," and he had no just excuse for what he did to Plaintiffs. Rule 7056-1 Statement ¶ 134; Nathan Decl. Ex. B ¶ 181. Thus, the result here is the same as in *In re Docteroff*: "all of the elements of the relevant dischargeability provisions are encompassed by the allegations made in the complaint underlying the [prior] court's judgment." 133 F.3d at 215.[5] It follows that the Freeman Judgment is nondischargeable as a matter of law. *Id.*; *see also Heslin v. Jones (In re Jones)*, 655 B.R. 868, 883 (Bankr. S.D. Tex. 2023) (granting summary judgment as to nondischargeability of defamation and IIED liability based on the allegations "deemed . . . admitted" through default, including that the defendant's "defamatory statements were knowingly false or made with reckless disregard for the truth," and that "Defendants knew that their publication could cause Plaintiff to suffer harassment and potential

---

[5] Mr. Giuliani previously conceded as much. In the Freeman Litigation, the parties' joint statement of the case asked the Court to explain to the jury that, "[t]he Court has already determined that Defendant Giuliani is liable for defamation per se, intentional infliction of emotional distress, and conspiracy, and that Ms. Freeman and Ms. Moss are entitled to receive compensation, including in the form of punitive damages, *for Defendant Giuliani's willful conduct*." Rule 7056-1 Statement ¶ 143, n.4; Nathan Decl. Ex. P at 2 (emphasis added). The parties' joint proposed jury instructions provided that "[i]t . . . has been decided that Defendant Giuliani's conduct was willful," and "[t]he Court's finding that Defendant Giuliani made the Actionable Statements 'without privilege to a third party' means that he did not have a separate legal right to make them." Rule 7056-1 Statement ¶ 143, n.4; Nathan Decl. Ex. Q at 3, 4.

violence," which "constitute[d] specific findings that [the defendant] objectively and subjectively

intended the consequences of his defamatory acts and intentional infliction of emotional distress").

## II.     The Punitive Damages Award and Attorney's Fee Awards Are Also Nondischargeable Under Section 523(a)(6) Because They Are Ancillary to the Nondischargeable Compensatory Award.

The remaining components of the Freeman Judgment are also nondischargeable under

Section 523(a)(6). As with the award of compensatory damages, the Declaratory Judgment's

specific language conclusively establishes the nondischargeability of the punitive damages award,

declaring that Mr. Giuliani's conduct giving rise to that award was "intentional, malicious, wanton,

and willful." Rule 7056-1 Statement ¶ 146. Further, and independently, both the punitive damages

and attorney's fee awards are nondischargeable under well established law because they both are

ancillary to, and arise from, the underlying willful and malicious injury redressed by the

compensatory award.

### A.   The $75 Million Punitive Damages Award and $237,113 Attorney's Fee Awards Are Nondischargeable.

The punitive damages component of the Freeman Judgment is nondischargeable under

Section 523(a)(6) because, under Section 523(a), a "debt for" conduct that Section 523(a) renders

nondischargeable "encompasses any liability arising from" that conduct, "including treble

damages, attorney's fees, and other relief,"—including, here, punitive damages. *Cohen v. de la

Cruz*, 523 U.S. 213, 223 (1998). As the Fourth Circuit recently explained: "*Cohen* holds that

§ 523(a)'s exceptions may reach punitive and other related ancillary debts. Once it is established

that specific money is for fraud, willful and malicious injury, or other conduct excepted under

§ 523(a), then 'any debt' arising from the injury—not only the part of the debt that makes the

victim whole—is non-dischargeable." *In re Hilgartner*, 91 F.4th 186, 193-94 (4th Cir. 2024)

(cleaned up); *see United States v. Fusion Connection, Inc. (In re Fusion Connect, Inc.)*, 634 B.R.

22, 32 (S.D.N.Y. 2021) (noting that *Cohen*'s analysis extends to punitive damage awards traceable to the nondischargeable debt); *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) (Posner, J.) (same, citing cases, and explaining that "punitive damages are a debt owed by a tortfeasor to his victim, and in this case they are a debt consequent upon a willful and malicious injury"); *Beckett v. Bundick (In re Bundick)*, 303 B.R. 90, 118 (Bankr. E.D. Va. 2003) ("Punitive damages are not discharged if the conduct giving rise to the award of punitive damages sprang from the same willful and malicious conduct giving rise to the award of compensatory damages."). The punitive damages component of the Freeman Judgment is accordingly nondischargeable because it is a "debt consequent upon a willful and malicious injury." *Jendusa-Nicolai*, 677 F.3d at 322. The same analysis applies to the $237,113 attorney's fee component of the Freeman Judgment. *See In re Hilgartner*, 91 F.4th at 193; *Freer v. Weinstein (In re Weinstein)*, 173 B.R. 258, 271 (Bankr. E.D.N.Y. 1994) ("[T]he dischargeability of ancillary obligations such as attorney's fees turn[s] on the dischargeability of the underlying debt."); *see also Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987). And the same is true of any interest on the judgment. *In re Hilgartner*, 91 F.4th at 194–95. The Freeman Judgment is therefore nondischargeable in its entirety.

### B.    The Attorney's Fee Awards Are Independently Nondischargeable as Compensation for Willful and Malicious Injury.

The three fee awards are independently excepted from discharge under Section 523(a)(6) as separate willful and malicious injuries, for two separate reasons.

First, the District Court specifically found that Mr. Giuliani's discovery misconduct *was part and parcel of* his overall scheme to inflict willful and malicious injury on Plaintiffs. In particular, the District Court found that Mr. Giuliani engaged in "willful shirking of his discovery obligations *in anticipation of and during*" the Freeman Litigation, and that "[t]he only reasonable

explanation for Giuliani's blatant disregard for satisfying his preservation obligations—despite fully understanding them—is that he intentionally and willfully ignored them" in order to deprive Plaintiffs of the evidence they needed to seek redress for his wrongs. *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 5600316, at *2, *18 (D.D.C. Aug. 30, 2023) (emphasis added). As such, the fee awards are nondischargeable because they are part of the same willful and malicious scheme to inflict harm on Plaintiffs, based upon findings that Mr. Giuliani is precluded from challenging here. *Supra*, at 7–8, 11–12, 14.

Second, and independently, the District Court made specific findings that the discovery violations that gave rise to the fee awards were willful and malicious. In its default judgment opinion, the Court recounted, at length, the long and troubled course of discovery in the Freeman Litigation that led to the first two fee awards. *Freeman v. Giuliani*, 2023 WL 5600316, at *3–11. The Court repeatedly described Mr. Giuliani's conduct as willful and unjustified. *E.g.*, *id.* at *2 (calling Mr. Giuliani's conduct "the willful shirking of his discovery obligations in anticipation of and during this litigation"); *id.* at *18 (noting that "[t]he only reasonable explanation for Giuliani's blatant disregard for satisfying his preservation obligations—despite fully understanding them— is that he intentionally and willfully ignored them."); *id.* *21 (referring to Mr. Giuliani's "willful discovery violations"); *id.* at *19 (describing Giuliani's "continued noncompliance, without excuse or explanation," with court orders entered in response to Plaintiffs' first motion to compel).

Mr. Giuliani is collaterally estopped from challenging those findings, and taken together they compel the conclusion that Mr. Giuliani's discovery misconduct itself inflicted willful and malicious injury on Plaintiffs. *Supra* at 10, 12–15. In analogous situations, bankruptcy courts have

reached the same result. *E.g.*, *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 145 (Bankr. S.D.N.Y. 1998).[6]

## **CONCLUSION**

For the foregoing reasons, the Freeman Judgment is nondischargeable in its entirety. Plaintiffs' motion for summary judgment should be granted, and the Court should enter judgment determining that the entire debt represented by the December 18, 2023 Freeman Judgment is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

Respectfully submitted,

Dated: April 5, 2024

/s/ Rachel C. Strickland

Michael J. Gottlieb
Meryl Governski (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC  20006

Von A. DuBose (*pro hac vice* forthcoming)
DUBOSE MILLER LLC
75 14th Street NE
Suite 2110
Atlanta, GA  30309
Telephone: (404) 720-8111

Rachel C. Strickland
Aaron E. Nathan
James H. Burbage
M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY  10019
Telephone: (212) 728-8000
rstrickland@willkie.com

Rachel Goodman
John Langford
UNITED TO PROTECT DEMOCRACY
82 Nassau Street, #601
New York, NY  10038
Telephone: (202) 579-4582-

---

[6] *See also In re Nangle*, 274 F.3d 481, 484 (8th Cir. 2001); *In re Suarez*, 400 B.R. 732, 738 (B.A.P. 9th Cir. 2009), *aff'd*, 529 F. App'x 832 (9th Cir. 2013); *In re Sarff*, 242 B.R. 620, 627 (B.A.P. 6th Cir. 2000); *Yash Raj Films (USA) v. Akhtar (In re Akhtar)*, 368 B.R. 120, 131 (Bankr. E.D.N.Y. 2007). Some courts hold that any violation of a prior court's order amounts to willful and malicious conduct for purposes of § 523(a)(6) and that a debtor is precluded from challenging their dischargeability. *E.g.*, *Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229, 242 (Bankr. W.D.N.Y. 1999); *PRP Wine Int'l, Inc. v. Allison (In re Allison),* 176 B.R. 60, 64 (Bankr. S.D. Fla.1994). In light of the specific findings made in this case, the Court need not rely on such a *per se* rule here.